UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF INTERNATIONAL MARINE, L.L.C. AND INTERNATIONAL OFFSHORE SERVICES, L.L.C. AS OWNERS AND OWNERS PRO HAC VICE OF THE M/V INT'L HUNTER PETITIONING FOR EXONERATION FROM OR LIMITATION OF LIABILITY | CIVIL ACTION<br><br>NO:  12-358<br><br>SECTION: "S" (5) |

ORDER AND REASONS

**IT IS HEREBY ORDERED** that Petitioners'/Third-Party Plaintiffs' Motion In Limine to Exclude All Allegations of Captain William Pennington's Alleged Negligence on Other Dates and Outside the Events in Question (Doc. #129) is **DENIED**.

BACKGROUND

This matter is before the court on a motion in limine filed by petitioners in limitation/third-party plaintiffs, International Marine, L.L.C., as owner of the M/V INT'L HUNTER, and International Offshore Services, L.L.C., as owner pro hac vice of the M/V INT'L HUNTER (collectively "International Marine"), seeking to exclude references to Captain William Pennington's alleged negligence on dates other than the date of the allision at issue in this litigation.

On December 13, 2011, the M/V INT'L HUNTER, which was being operated by Captain Pennington, allided with an unmanned production platform in West Cameron Block 168 in the Gulf of Mexico that was owned by Linder Oil Company, a Partnership, Linder Energy Company, Louisiana General Oil Company, Sojitz Energy Ventures, Inc., Destin Resources LLC, and Reserves Management, L.C. (collectively "Linder").  At the time of the allision, part of the platform, the WC 168 #2, rested five feet below the waterline. In April 2011, Linder installed a bouy approximately

420 feet south of the location where the WC 168 #2 rested five feet below the water line to mark the obstruction.

Captain Pennington had been through West Cameron Block 168 before, was aware of the location of WC 168 #2, and knew that it was marked with a bouy. He testified at his deposition that he intended to rely on the bouy's placement to avoid an allision with WC 168 #2. When he approached the area, Captain Pennington passed to the north of the bouy and allided with WC 168 #2. The M/V INT'L HUNTER sank. Captain Pennington testified that he thought that bouys could be passed on any side at the captain's discretion. The four crew members and three passengers boarded life boats and were rescued about an hour after the allision.

On February 4, 2012, International Marine filed its petition for exoneration from or limitation of liability in the December 13, 2011, allision in the United States District Court for the Eastern District of Louisiana. Jake Bergeron, a passenger on the M/V INT'L HUNTER, and Lorenzo Williams and Benjamin Elliot, crew members of the M/V INT'L HUNTER, filed claims for their injuries. International Marine filed a third-party complaint against Linder, alleging that Linder was at fault for the allision because it failed to properly mark or remove the obstruction.

At their depositions in this matter, Williams and Elliot testified that they had witnessed Captain Pennington operating the vessel in a dangerous manner on numerous occasions prior to the allision, and complained to supervisors at International Marine. After they settled their claims against International Marine, Williams and Elliot made statements under oath in the presence of their counsel and International Marine's counsel recanting their statements regarding Captain Pennington's alleged prior negligence. International Marine also obtained affidavits from

2

supervisory personnel stating that they did not recall any complaints about Captain Pennington. International Marine seeks to exclude evidence regarding Captain Pennington's alleged prior acts of negligence arguing that it is irrelevant to the allision at issue in this litigation, and that Williams and Elliot have recanted their deposition testimony. Bergeron opposes the motion arguing that Captain Pennington's alleged negligence is relevant to the issue of International Marine's privity or knowledge of an unseaworthy condition aboard the vessel. Bergeron also argues that his counsel was not present when Williams and Elliot made their sworn statements recanting their deposition testimony and has not had the opportunity to cross-examine them on those statements.

## ANALYSIS

Rule 402 of the Federal Rules of Evidence provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority." Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Id. at 403.

"The Limited Liability Act allows a vessel owner to limit its liability for any loss or injury caused by the vessel to the value of the vessel and its [pending] freight." In re Hellenic Inc., 252 F.3d 391, 394 (5th Cir. 2001); 46 U.S.C. § 183(a). Under the Act, a claimant must first establish

negligence or unseaworthiness. Id.; 46 U.S.C. § 183(a).  The burden then shifts to the vessel owner to prove that the negligence or unseaworthy condition was not within its privity or knowledge. Id.; 46 U.S.C. § 183(a).

The phrase "privity or knowledge" is not defined in the Act.  The United States Court of Appeals for the Fifth Circuit has held that privity or knowledge "must turn on the facts of the individual case." Hellenic, 252 F.3d at 395.  A shipowner "has privity if he personally participated in the negligent conduct or brought about the unseaworthy condition." Trico Marine Assets Inc. v. Diamond B Marine Serv., 332 F.3d 779, 789 (5th Cir. 2003).  If the shipowner is a corporation, "knowledge is judged by what the corporation's managing agents knew or should have known with respect to the conditions or actions likely to cause the loss." Brunet v. United Gas Pipeline Co., 15 F.3d 500, 504 (5th Cir. 1994) (citing Pennzoil Producing Co. v. Offshore Exp., Inc., 943 F.2d 1465, 1471 (5th Cir. 1991)).  "[P]rivity or knowledge is imputed to the corporation when the employee is an executive officer, manager or superintendent whose scope of authority includes supervision over the phase of the business out of which the loss or injury occurred." Hellenic, 252 F.3d at 394 (internal quotation and citation omitted).  A corporate shipowner "may be deemed to have constructive knowledge if the unseaworthy or negligent condition could have been discovered through the exercise of reasonable diligence." Brister v. A.W.I., Inc., 946 F.2d 350, 356 (5th Cir. 1991)).  "[H]owever, the limited liability doctrine is also sensitive to the scope of an owner's control over his agents." Hellenic, 252 F.3d at 396.

All of the evidence regarding Captain Pennington's alleged negligent acts prior to the allision are relevant to the issue of International Marine's privity or knowledge of an alleged unseaworthy condition aboard the M/V INT'L HUNTER created by Captain Pennington's alleged incompetence.

This matter is a bench trial. The court can hear and properly weigh all of the evidence on this issue. Further, allowing such testimony would permit Bergeron to cross-examine Williams and Elliot regarding their sworn statements. Therefore, International Marine's motion in limine is DENIED.

## CONCLUSION

**IT IS HEREBY ORDERED** that Petitioners'/Third-Party Plaintiffs' Motion In Limine to Exclude All Allegations of Captain William Pennington's Alleged Negligence on Other Dates and Outside the Events in Question (Doc. #129) is **DENIED**.

New Orleans, Louisiana, this __9th__ day of October, 2013.

*[signature]*
**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**